IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No: 1:18-cr-446 |
| | ) | |
| BRIAN THOMAS SAPP, | ) | The Honorable Anthony J. Trenga |
| | ) | |
| | ) | Sentencing: March 29, 2019 |
| Defendant. | ) | |

**UNITED STATES' MOTION TO REMAND DEFENDANT SAPP**

**AND RESPONSE TO DEFENDANT'S AMENDED FILING**

The United States hereby moves to remand the defendant into the custody of the United States Marshall's Service following this Court's pronouncement of its custodial sentence on March 29, 2019. 18 U.S.C. § 3143. This motion is based on new evidence that the government has acquired within the last 24-36 hours, as described below.

The United States has recently learned that the defendant has been procuring statements from his friends and others to this Court in support of a lenient or no jail sentence predicated on misleading information, in two primary ways. First, the defendant has minimized his conduct, claiming that the fraud could have happened to anybody and that he just got in over his head and made some mistakes. Second, and much more seriously, the United States has learned in the past 24 hours that the defendant's "plan" to repay the victims of his offenses utterly and irrevocably collapsed, as the defendant then well knew, on **February 1, 2019**. On that date, (reaffirmed on the next day, February 2 by Individual K.F. and his wife) the defendant was terminated from his

business arrangement with Individual K.F.[1] and was also told, in no uncertain terms, to vacate the guest residence on Individual K.F.'s property by April 1, 2019. The defendant has, nevertheless, persisted in procuring letters of support dated well after February 1, 2019, which contain and relay misleading information provided by the defendant. The defendant has told his friends that he needs to be out of custody (or receive a light sentence) in order to see his plan through to repay the victims. The defendant even re-filed, and thereby reaffirmed, many of these letters on March 27, 2019, Wednesday night at 10:30 p.m., approximately five hours after the government provided the interview summary of Individual K.F. and the interview summaries of Individuals P.M. and M.S. to his attorney of record. The defendant's filing (and his failure to advise his counsel to correct the record) occurred **54 days** after he well knew his business venture was terminated and he was given notice to vacate his guest residence.

As is crystal clear from reading the interview summary of Individual K.F., the defendant has been totally terminated from working with Individual K.F. for almost two months now. The venture with Individual K.F. was the defendant's only plan and possibility of repaying his victims. According to the statement of Individual K.F and his spouse, the defendant has had no outside employment since he moved in to the guest house on their property many months ago. He has not worked and repaid a single dime to any of his victims, and in fact, he has refused to work. Apparently, the defendant spends his time cultivating friends on the telephone, cultivating people at the gym he frequents, and lobbying people to writer letters of support for him based on incomplete and misleading information. Indeed, not having a real job for upwards of six years

---

[1] The FBI FD-302 interview summary of Individual K.F. and his wife, along with interview summaries of all other persons referenced in this filing have been provided to defense counsel and the Probation Officer via email. The government will lodge copies with the Court along with its courtesy copy of this filing.

has left the defendant a lot of time to cultivate victims and to ingratiate himself to so many people he can manipulate and use to his benefit, as needed.

Defendant's lies to Individual M.S. are troubling and should give the Court serious pause in whether it can trust this defendant while he remains out of custody. Individual M.S's letter to the Court is dated **February 27, 2019**. In his statement to the FBI, Individual M.S states that SAPP had "recently" called him, described a plan to pay people back, and asked for a letter of support. In his ensuing letter, Individual M.S. implored the Court for leniency so that the defendant can stay out of custody in order to pay back everyone in full. The defendant only withdrew that letter on Wednesday night at 10:30 p.m., and then only because Individual M.S demanded it be withdrawn after he had learned more about the case from another friend and a court filing. The same can be said for Individual P.M., whose now withdrawn letter of support is dated **February 22, 2019**.

The defendant attempts to obfuscate and salvage this sad situation with his defecting supporters by an amended filing that now, less than two days before the hearing, takes issue with the Pre-Sentence Investigation Report's conclusion that he never did a single legitimate deal for his victims. Over the course of apparently 6 years, the defendant now throws up a couple of property referral deals where he was evidently paid modest amounts of money. As Individual J.Z makes clear in his interview summary, however, the defendant never had enough money to buy a single property. The defendant simply scouted out a handful of properties over the course of six years and was paid relatively modest amounts as a finder's fee. The defendant has thrown up a red herring and has mischaracterized what the PSR and the government concluded (which the defendant has previously admitted to the Probation Officer): that he never did what he said he would with his investors funds; that he never did a real property purchase and sale with investor

3

funds, and that he never earned any of the claimed income he reported to investors. He defrauded his very first investor, M.M., Jr., and he continued to defraud all of his investors in every single deal he claimed he was executing, for over four years. The government and the Probation officer have never said he didn't do a handful of legitimate things outside of the main fraud scheme. This latest argument is really a straw man and deserves no further comment.

Under the 1984 Bail Reform Act, the law governing a defendant's release after sentencing and during an appeal "shifted from a presumption of release to a presumption of valid conviction" and incarceration. *United States v. Perholz*, 836 F.2d 554, 556 (D.C. Cir. 1987) (per curiam) (*citing* S. Rep. No. 225, 98th Cong., 1st Sess. 27 (1983)). Here, there is no appeal, and the defendant will receive a substantial custodial sentence (somewhere between 2 years and 22 years). After conviction and sentence, the law, codified at 18 U.S.C. § 3143, requires a defendant to demonstrate by "clear and convincing evidence" that he not a risk of flight and that he poses no risk of danger to the community, or the Court shall revoke his conditions and remand him to custody.

Danger to the community can be economic. *See, e.g., United States v. Reynolds*, 956 F.2d 192 (9th Cir.1992) ("danger may, at least in some cases, encompass pecuniary or economic harm"); *United States v. Parr*, 399 F.Supp. 883, 888 (W.D.Tex.1975) ("The 'danger to ... the community' [language in the Bail Reform Act] permits consideration of the defendant's propensity to commit crime generally, even where only pecuniary and not physical harm might result to the community at large."). *United States v. DeSimone*, 2009 WL 904688, at *2 (citing *United States v. Persaud*, No. 05–cr–368, 2007 WL 1074906, at *1 (N.D.N.Y. Apr. 5, 2007) ("economic harm qualifies as a danger within the contemplation of the Bail Reform Act"); *United States v. Provenzano*, 605 F.2d 85, 95 (3d Cir. 1979); *United States v. Giordano*, 370

F.Supp.2d 1256, 1270 (S.D.Fla.2005) ("no question that an economic danger, like that posed by a serial defrauder, falls under the broad umbrella of 'dangerousness' as that term is used throughout the Bail Reform Act") (citation omitted)); *United States v. Zaragoza*, 2008 WL 686825, at *3 (N.D.Cal. Mar. 11, 2008). Those who commit a string of frauds are particularly not to be trusted. *See, e.g., United States v. Masters*, 730 F. Supp. 686, 689 (W.D.N.C. 1990) ("Defendant asserts that he does not pose a physical danger to the community. However, the Court believes it must also consider the danger of a person who continues to participate in possibly fraudulent schemes … the Court believes Defendant is an unrepentent con-artist who will continue to prey on any person gullible enough to listen to his sales talk") (*citing United States v. Malquist*, 619 F.Supp. 875, 878 (D.Mont.1985).

Given the defendant's recent conduct, this Court should remand the defendant immediately at the conclusion of the sentencing hearing. The defendant has demonstrated a continued pattern of dishonesty up to today. Moreover, since the collapse of his business opportunity, the defendant has no reason to remain out of custody: he has no plan and he does not even work. He has not paid back any victims. He has simply spent his time living off of others, even after he pleaded guilty. Now Individual K.F. is putting an end to it. This defendant has been accorded a great deal of courtesy due to his pre-indictment plea. But his recent conduct is troubling and indicative of an unreformed mind and of somebody who is very capable of inflicting financial harm on the community and of not following this Court's orders, especially now that he is faced with a substantial custodial sentence.

For all of those reason, the United States respectfully requests that defendant Sapp be remanded into custody on March 29, 2019.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

_____/s/_____
Russell L. Carlberg
Counsel for the United States
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314

## CERTIFICATE OF SERVICE

I certify that on this 28[h] day of March 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to counsel of record.

/s/
Russell L. Carlberg
Special Assistant United States Attorney LT
United States Attorney's Office
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Fax: (703) 299-3982
Russell.L.Carlberg@usdoj.gov